UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIGRAN SHAKHBAZYAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>　　　　Defendant. | Case No. CV 14-3370-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On May 12, 2014, plaintiff Tigran Shakhbazyan filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two issues for decision: (1) whether the Administrative Law Judge ("ALJ") failed to fully and fairly develop the record; and (2) whether there was an apparent conflict between the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT"), such that the ALJ erred at step five in relying on the VE's testimony. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-5; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-4; *See* U.S. DEP'T. LAB., DICTIONARY OCCUPATIONAL TITLES, ADMINISTRATIVE ASSISTANT (4th ed. rev. 1991)) ("DOT").

Having carefully studied, inter alia, the parties' written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not fail to fully develop the record. Under the circumstances presented, it was within the ALJ's discretion to decline to hold a fourth administrative hearing or posit interrogatories to a consultative medical examiner at counsel's request. Additionally, the ALJ did not err at step five because there was no conflict between plaintiff's limitations and the jobs the VE found plaintiff capable of performing, as defined in the DOT. Consequently, this court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty years old on the date he filed his SSI application, has a high school education. AR at 147, 161, 197, 298. Although Armenian is plaintiff's primary language, he understands and communicates in English. *Id.* at 28, 35, 45-46, 192, 299. Plaintiff has no past relevant work experience.[1] *Id.* at 28.

---

[1] Plaintiff worked as a limousine driver and jeweler, but the ALJ found "these jobs were not clearly performed at the substantial gainful activity level." AR at 28; see *id.* at 153, 162.

On June 10, 2010, plaintiff applied for SSI, alleging that he has been disabled since October 1, 2007, due to hearing problems, severe dizziness, nausea, inability to maintain physical balance, problems walking without assistance as a result of numerous head and ear operations, and deep depression. *Id.* at 147, 161, 168. The Commissioner denied plaintiff's application, after which he filed a request for a hearing.[2] *Id.* at 71-81.

On July 7, 2011, plaintiff, represented by counsel, appeared before the ALJ, but did not testify. *Id.* at 35-39. Concerned that the record was not fully developed, the ALJ ordered plaintiff to attend a consultive examinations and adjourned the hearing. *Id.* at 37-38. On March 14, 2012, the ALJ convened a second hearing at which plaintiff, who was again represented by counsel, testified through an interpreter. *Id.* at 42-59. After plaintiff stated he previously applied for and received benefits from the Social Security Administration ("SSA"), this hearing was also adjourned to more fully develop the record. *Id.* at 51-59.

Plaintiff and his counsel appeared before the ALJ for a third time, on August 3, 2012. *Id.* at 63-70. At this hearing, the ALJ submitted to the record the answers provided by Vocational Expert David E. Reihart in response to the ALJ's propounded interrogatories. *Id.* at 63. And the ALJ ruled against plaintiff's request to have additional interrogatories submitted to the neurological consultive examiner. *Id.* at 63-69.

On September 20, 2012, the ALJ denied plaintiff's claim for benefits. *Id.* at 19-29.

---

[2] Plaintiff's case was not eligible for reconsideration by the Commissioner because the case was designated as a prototype case. AR at 71.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since June 10, 2010, the SSI application date. *Id.* at 22.

At step two, the ALJ found that plaintiff suffered from the following severe combination of impairments: a history of brain tumor, status post suboccipital craniotomy resection; early cataracts; unspecified hearing loss and unspecified tinnitus; episodes of syncope; cognitive disorder, not otherwise specified; and depressive disorder associated with medical condition. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 23. The ALJ "specifically considered whether the 'paragraph B' criteria of listings 12.02 (Organic mental Disorders) and 12.04 (Affective Disorders) [were] satisfied" and concluded plaintiff's impairments fail to meet or equal the requirements of any listing. *Id.* at 23-24.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[3] and determined that he had the RFC to perform a full range of simple, routine, and repetitive work, and may frequently perform detailed, complex work, with the physical limitations that plaintiff could: lift and carry up to fifty pounds occasionally and twenty-five pounds frequently; stand and walk up to six hours and sit up to six hours, cumulatively, but may alternate positions every two hours;

---

[3] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

4

climb and balance on an occasional basis, but never climb ladders, ropes, and scaffolds. *Id*. at 24. The ALJ also determined that plaintiff could not work at dangerous heights, around fire and water hazards, or around dangerous moving machinery. *Id.*

The ALJ found, at step four, that plaintiff had no past relevant work. *Id.* at 28.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including hand packager, assembler of small products, and electronics worker. *Id.* at 28-29. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 29.

Plaintiff filed a timely request for review of the decision, which the Appeals Council denied. *Id.* at 1-6, 14. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. ALJ Permitted Plaintiff Sufficient Opportunity to Develop the Record

Plaintiff first contends that, in light of ambiguous evidence in the record, the ALJ failed to "'develop the record fully and fairly and to ensure [plaintiff's] interests [were] considered.'" P. Mem. at 2 (quoting *Mayes*, 276 F.3d at 459). The court disagrees.

Plaintiff has the burden of "furnish[ing] medical and other evidence that [the Commissioner] can use to reach conclusions about [plaintiff's] medical impairments(s)." *Id.* at 459 (quoting 20 C.F.R. § 404.1512(a) (2000)). Similar to the claimant in *Mayes*, here plaintiff "is not contending in this appeal that the evidence before the ALJ was sufficient to establish that [he] was disabled," but

rather that "had the ALJ developed the record and established [his episodic symptoms], he would have found [plaintiff] disabled." *Id.* at 461. Plaintiff may not shift his burden of production to the ALJ. *Id.* at 459; *see* 42 U.S.C. § 423(d)(5) (Supp. 2001).

On July 7, 2011, plaintiff, represented by counsel, appeared before the ALJ. AR at 35-39. The ALJ declined to take testimony at this hearing because the record was not fully developed. *Id.* Instead, the ALJ ordered plaintiff to attend additional consultive examinations. *Id.* at 37-38. The ALJ specifically requested plaintiff undergo a Halstead-Reitan neurological battery or the Luria-Nebraska neurophysiological battery to aid in the ALJ's evaluation of plaintiff's alleged organic mental disorder. *Id.* at 37-38. Plaintiff was permitted time to "develop [his] case after receipt of [the additional consultive] reports, and so as to allow [plaintiff] to use whatever experts [he] choose[s] to use." *Id.* at 38.

After receiving the supplemental examination reports ordered by the ALJ, plaintiff's counsel requested the ALJ propound interrogatories on the consultive neurologist. *Id.* at 178. Plaintiff did not subpoena the doctor to compel his testimony either in writing or in person. *Id.* at 65. The ALJ explained at length and on the record the basis for his decision not to require the doctor to provide additional testimony. *Id.* at 19-20, 65-70.

On March 14, 2012, plaintiff represented by the same counsel, attended a second hearing before the ALJ. *Id.* at 42. At this hearing the ALJ acknowledged and placed in the record several documents including the results of consultive psychological and neurological examinations. *Id.* at 43. But, as the ALJ noted, the specific tests he requested – and believed to be necessary in making a determination as to whether plaintiff meets a listing based on an organic mental disorder – were not conducted. *Id.* at 44. Plaintiff neither objected to the reports,

nor presented any additional medical opinions. *Id.* at 45. At this hearing plaintiff testified through an interpreter that he previously applied for and received benefits from the Social Security Administration ("SSA"). *Id.* at 46-59. The ALJ, having nothing in the record regarding another application, adjourned the hearing with the intent of acquiring documentation related to plaintiff's former claim.[4] *Id.* at 58-59.

After submission of the additional evaluations, the ALJ propounded interrogatories on VE David A. Rinehart. *Id.* at 190-97. Plaintiff's counsel was notified of the VE's responses and provided an opportunity to comment on the record, submit additional evidence, or request cross-interrogatories be presented to the VE. *Id.* at 201. Plaintiff declined to comment, submitted no evidence in response to the VE's testimony, and did not propound any additional interrogatories. *Id.* at 63-65. On August 3, 2012, plaintiff and his counsel appeared before the ALJ for a third time. *Id.* at 63-70. At this hearing, the ALJ submitted to the record the answers provided by the VE. *Id.* at 63. And the ALJ ruled against plaintiff's request to have additional interrogatories submitted to the neurological consultative examiner. *Id.*

The ALJ may only consider evidence submitted into the record. 42 U.S.C. § 423(d)(5)(B); *Mayes*, 276 F.3d at 459; *see* AR at 45 ("I have to rely upon the evidence which is currently in the record. And I cannot go outside the record even for my own suspicions or understandings."). The ALJ twice delayed proceedings to permit plaintiff additional time to fully develop the record. AR at 37-39, 58-59. The ALJ ordered additional evaluation of plaintiff by the SSA and requested specific testing be conducted to aid in his determination of whether plaintiff's mental impairments met or equaled a listing. *Id.* at 37-38, 45. That the SSA

---

[4] Plaintiff's testimony was in error, as he had not filed a previous claim for social security benefits. *See* AR at 147-152, 156.

declined to conduct these specific tests is not under the ALJ's control, nor does it limit plaintiff's ability to have other experts conduct the requested tests. *See id.* at 67-68 (explaining the relationship between consultative examiners and the Department of Developmental Services and the SSA).

"To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990); *see* 20 C.F.R. § 404.1525(d). To establish that his impairment is medically equivalent to a listed impairment, it is plaintiff's burden to show that his impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). The ALJ provided plaintiff with ample opportunity to fully develop the record and to supply testing results that the ALJ specific informed plaintiff would provide "essential [information] as to whether the claimant met or equaled a listing of impairments." AR at 45; *see id.* at 37-38. Plaintiff failed to meet his burden of proof. 20 C.F.R. § 416.926(a). An ALJ's acknowledgment that the record lacks sufficient evidence despite plaintiff's repeated opportunities to submit additional evidence, does not shift the burden of proof to the ALJ. *Mayes*, 276 F.3d at 459; *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir.1998); *Smolen*, 80 F.3d at 1288) (noting an ALJ may fulfill his duty to develop the record by "continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record").

It is true, of course, that where the record is ambiguous, the ALJ has the duty to develop the record further. *Mayes*, 276 F. 3d at 459-60. But the ALJ found no ambiguity here. On the contrary, he simply found a lack of objective medical evidence to support plaintiff's claims. See e.g., AR at 27. Given the

many opportunities plaintiff had to supplement and develop the record, and given the absence of ambiguity, the ALJ did not err in failing to still further develop the record.

**B.     ALJ Did Not Err at Step Five Because There Is No Actual or Apparent Conflict Between the DOT and the Jobs Identified by the VE**

Plaintiff also contends the ALJ erred because he improperly relied on the testimony of the VE, who identified jobs with requirements that conflicted with the limitations in plaintiff's RFC.  P. Mem. at 3-5.  Plaintiff alleges that the ALJ erred by failing to identify and explain the inconsistencies between the VE's testimony and the DOT.  *Id.*

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC.  20 C.F.R. §§ 404.1512(f), 416.912(f).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information).  The DOT and its Selected Characteristics of Occupations supplement may be relied upon as the rebuttable presumptive authority regarding job classifications.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); *see also* U.S. DEP'T. LAB., DOT, (4th ed. rev. 1991); SELECTED CHARACTERISTICS OF OCCUPATIONS TITLES (U.S. Dep't Lab. Emp. Training Admin. 1993) ("SOC").  An ALJ may not rely on a VE's testimony regarding the

requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefore. *Massachi*, 486 F.3d at 1152-53 (citing Social Security Ruling ("SSR") 00-4p).[5] But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19.

In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'" *Id.* at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

Here, the ALJ, as required, asked the VE whether his testimony was consistent with the DOT, to which the VE replied that it was. AR at 195. Although the ALJ fulfilled his initial obligation to inquire whether the VE's testimony conflicted with the DOT, that was not the end of the ALJ's obligations. Where a VE wrongly testifies that there is no conflict, if "evidence from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p). Where the ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the

---

[5] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

11

VE did not identify the conflict – the ALJ errs. *See Hernandez v. Astrue*, 2011 WL 223595, at *2-5 (C.D. Cal. Jan. 21, 2011) (where VE incorrectly testified there was no conflict between her testimony and DOT, ALJ erred in relying on VE's testimony and failing to acknowledge or reconcile the conflict).

In determining plaintiff's RFC, the ALJ found, among other things, that plaintiff should avoid working "around dangerous moving machinery." AR at 24. The VE testified that someone with plaintiff's RFC could perform the jobs of hand packager (DOT 920.587-018), small products assembler (DOT 706.684-022), and electronics worker (DOT 726.687-010). *Id.* at 194. Plaintiff argues "the clear language of these [DOT] classifications implies that all these occupations may require exposure to dangerous machinery." P. Mem. at 5. The court disagrees.

Appendix D of the SOC defines the several environmental characteristics described in the "Uses" section of a DOT classification. SOC at D-1; DOT 706.684-022 ("U: Working UNDER specific instructions"). Each characteristic is rated as Not Present, Occasionally, Frequently, or Constantly to "provide a systematic means to describe fourteen possible surroundings or settings in which the occupation is found or the job may be performed." SOC at D-1. Environ-mental characteristic number eight relates to a worker's "proximity to moving mechanical parts [and a worker's e]xposure to possible bodily injury from moving mechanical parts of equipment, tools, or machinery." *Id.* at D-2.

A hand packager "[p]ackages materials and products *manually*, performing any combination of following duties . . . ." DOT 920.587-018 (emphasis added). While a hand packager's duties may include "start[ing], stop[ing], and regulat[ing the] speed of conveyor" (*id.*; P. Mem. at 4), that possibility is not sufficient to conclude an individual who manually assembles materials actually works around "dangerous moving machinery." AR at 24, 193. Moreover, the "Moving

Mech[anical] Parts" environmental factor for a hand packager is rated as not present. DOT 920.587-018. This factor is similarly rated as "not present" for the work environment of small products assemblers (DOT 706.684-022), and electronics workers. DOT 726.687-010.

Plaintiff also offers no support for his contention that the use of "handtools or portable powered tools" and "arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches" in the small products assemblers classification (DOT 706.684-022), and "cutting tool(s) and Power tools" in the electronics workers classification (DOT 726.687-010), constitutes proximity to dangerous moving machinery. And even if such equipment could somehow be considered moving machinery – contrary to the DOT's statement that the moving mechanical parts factor is not present – there is no equivalent language in the hand packager classification, making any error in this regard harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1044 (9th Cir. 2008) (finding the ALJ's error harmless because he "properly concluded as an alternative at step five that [plaintiff] could perform [other] work in the national and regional economies"); *Molina v. Astrue*, 674 F.3d 1104, 1119 (9th Cir. 2012) ("[The] harmless error rule, as codified in 28 U.S.C. § 2111 [and applied in the Social Security context], requires us to "give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.") (quoting 28 U.S.C. § 2111); *Shinseki v. Sanders*, 556 U.S. 396, 407, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009).

In short, according to the DOT, the jobs the VE indicated a hypothetical individual – of the same age, sex, educational level as plaintiff, with the same ability to communicate in English, and with plaintiff's RFC – could perform do

not involve exposure to injury from moving mechanical machinery.  Thus, no conflict exists between the DOT and the VE's testimony.  The ALJ did not err at step 5.

## V.

## CONCLUSION

      IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: August 17, 2015

                                      SHERI PYM
                                      United States Magistrate Judge